UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| BOARD OF TRUSTEES OF THE IRON WORKERS ST. LOUIS DISTRICT COUNCIL PENSION TRUST, *et al.*, | )<br>)<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | ) Case No. 4:22 CV 1049 JMB<br>) |
| BARNHART CRANE & RIGGING CO., | )<br>) |
| Defendant. | )<br>) |

## MEMORANDUM AND ORDER

After a hearing on October 10, 2023, various deadlines were set for discovery, Defendant's Motion for Partial Summary Judgment (Doc. 37), and a discovery dispute between the parties regarding Plaintiffs' Interrogatory #6 and Request to Produce #6.  The Court also heard argument on Plaintiffs' Motion to Amend the Complaint (Doc. 35), which is fully briefed.  Accordingly, now pending before the Court are Plaintiffs' Motion to Amend Complaint (Doc. 35) and the discovery dispute.  Also pending before the Court are two unopposed Motions for Leave to File Under Seal (Docs. 72 and 76).

**I.   Background**

Plaintiffs Board of Trustees of the Iron Workers St. Louis District Counsel Pension Trust ("Pension Trust"), Board of Trustees of the Iron Workers St. Louis District Council Annuity Trust ("Annuity Trust"), Board of Trustees of the Iron Workers St. Louis District Council Welfare Plan ("Welfare Plan"), Iron Workers Local No. 103 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers ("Local 103"), Iron Workers Local No. 321 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers

("Local 321"), and Iron Workers Local No. 782 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers ("Local 782"), filed a Complaint on September 30, 2022 (Doc. 1) pursuant to the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. § 1001, *et. seq.*, against Defendant, Barnhart Crane & Rigging Co.  Plaintiffs allege that Defendant failed to pay contributions, damages, and interest from October 1, 2016 to the present for work performed by individuals within the "territorial jurisdiction" of the Iron Workers St. Louis District Council (which includes Locals 103, 321, and 782).[1]

Plaintiffs allege that Defendant is a signatory to a National Maintenance Agreement with the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers Union, AFL-CIO (Doc. 1, ¶ 25).  The National Maintenance Agreement allegedly obligates Defendant to pay wages and fringe benefit contributions in accordance with Collective Bargaining Agreements entered into by the Pension Trust, Annuity Trust, Welfare Plan, and Locals 103, 321, and 782 and covering various workers.  In addition, Plaintiffs allege that Defendant is a signatory to "at least one Participation Agreement" with the Pension Trust, Annuity Trust, and Welfare Plan (Doc. 1, ¶ 28).  They allege that the Participation Agreement binds Defendant to their trust fund agreements, which include clauses related to auditing and collecting employer contributions.

In Count I, Plaintiffs claim that Defendant breached these agreements by failing to timely pay contributions related to Local 46, Local 321, and Local 782 from October 1, 2016 to September 30, 2019.  Plaintiffs further claim that Defendant paid the contributions, liquidated damages, and interest related to Local 46 and Local 782 in September, 2022.  However, they allege that Defendant still owes contributions ($50,222.22), liquidated damages ($5,022.22), and interest

---

[1] The Complaint also mentions Iron Workers Local No. 46 of the International Association of Bridge, Structural, Ornamental and Reinforcing Iron Workers ("Local 46"), however, Local 46 is not listed in the caption.

($34,469.11) related to Local 321 (for a total of $89,713.55).  Finally, Plaintiffs allege that more money may be due once a subsequent audit has been performed for October 2019 to the present.

In Count II, Plaintiffs allege that Defendant owes additional contributions and work assessments (totaling $202,228.13) related to Local 103 for the time period January 1, 2017 to November 30, 2020.  In Count III, Plaintiffs allege that Defendant owes additional contributions and work assessments (totaling $217,274.76) related to Local 321 for the same time period.  In Count IV, Plaintiffs allege that Defendant owes additional contributions and work assessments (totaling $128,568.36) related to Local 782 for the same time period.  For each Counts II to IV, Plaintiffs further request liquidated damages and/or interest and an order directing Defendant to participate in additional audits for December 1, 2020 to the present.

In its Amended Answer (Doc. 60), Defendant denies the existence of the National Maintenance Agreement (which is not attached to the Complaint) but admits that it is subject to one Participation Agreement with iron workers from Local 392 only (Id., ¶¶ 25, 29).  Local 392 is not a party to this lawsuit but a Participation Agreement to which it is a signatory is attached to the Complaint (Doc. 1-1).  Defendant also asserts affirmative defenses including "setoff for amounts paid to and/or pursuant to agreements with local ironworkers unions" (Id. p. 9, ¶ 3).

In their Motion to Amend, which was timely filed on August 14, 2023, Plaintiffs assert that "since initiating the lawsuit" they have found additional agreements which bind Defendant, namely a General Presidents' Project Maintenance Agreement ("GPPMA") and a Wind Turbine Agreement ("WTA") (Doc. 35, ¶ 12).  They further allege that these agreements require Defendant to pay contributions for work "performed at additional locations" (Id. ¶ 13).  Plaintiffs further seek to revise their prayer for damages.

In the proposed amended complaint (Doc. 35-1), Plaintiffs include reference to the GPPMA and WTA and further include paragraphs related to Local 577 of the International Association of Bridge, Structural, Ornamental, and Reinforcing Iron Workers.  Plaintiffs also increased their prayer for damages in Count I from $89,713.55 to $2,286,270.12 (plus any additional amounts found to be due and owing).  The amount requested is not just related to Locals 103, 321, and 782 but includes claims that appear to be related to nonparties Local 46 and Local 577.  At the hearing, Plaintiffs clarified.  They argue that Defendant engaged in a process of hiring ironworkers from one territorial jurisdiction to conduct work in the territorial jurisdiction of one of the named Locals.  Defendant then allegedly paid the rate and contributions of the out-of-territory ironworker at the rates commanded by that out-of-territory ironworker as opposed to the higher going rate/contributions in the jurisdiction of the named Locals in which they performed work.

In response, Defendant argues that Plaintiffs' claim that they recently discerned the two agreements and the additional request for damages is disingenuous.  In particular, Defendant notes that Plaintiffs knew of the WTA in March, 2022, six months prior to filing the complaint (Doc. 40-2, p. 1).[2]  Defendant further notes that Plaintiffs produced the "2018" GPPMA in their initial disclosures on January 13, 2023 (Doc. 40-1, p. 3).  Defendant states that allowing an amendment now, shortly prior to the close of discovery (at the time, October 13, 2023), would be prejudicial, and that, in any event the amendment would be futile.  At the hearing, Defendant also argued that Plaintiffs are attempting to make them liable for what is essentially an internal Union issue: namely the balancing, rectifying, refunding, and/or equalizing of Union wages and benefits in different jurisdictions.

---

[2] This exhibit is a demand letter from Plaintiffs' counsel Michael S. Vojta of the firm Johnson and Krol (which represents Plaintiffs before this Court, albeit with different attorneys) dated March 10, 2022.

In light of Plaintiffs' theory, they have engaged in discovery related to the location of jobsites and whether ironworkers were employed at those jobsites. This discovery includes Plaintiffs' Interrogatory #6 and related Request to Produce information related to year 2019. Plaintiffs argue that Defendant has failed to provide the critical information – namely whether ironworkers were employed at various job sites within the territorial jurisdiction of the named Locals even if those ironworkers are not members of the named Locals. Defendant states that it has provided all discovery requested and that Plaintiffs are merely engaging in a fishing expedition in order to prove up their flawed legal theory. After failing to acquire the information they want from Defendant, Plaintiffs issued third-party subpoenas to entities that employed Defendant for work conducted in Arkansas (the Western part of which is included in Local 321's jurisdiction). Those subpoenas, and responses thereto, remain outstanding.

## II. Discovery Dispute

Plaintiffs' Interrogatory #6 states:

> Identify the projects performed by Barnhart during the audit period within the Local 321 Territorial Jurisdiction.
>
> For each project, provide the project number, location of the project (city and state), and time period in which the project was performed.

(Doc. 57, p. 6). The "audit period" refers to October 1, 2016 to November 30, 2020 and the Territorial Jurisdiction refers to Howell County, MO and about 55 counties in Arkansas. In response, Defendant states:

> ANSWER: Defendant objects to the period in question, to the extent that "audit period" differs from Plaintiffs' defined term, "Audit Period." Defendant further objects to this interrogatory on the grounds it seeks documents and information that are not proportional to the needs of the case considering the totality of the circumstances, the information sought is not important in resolving the issues, and the burden upon Defendant of obtaining the information sought outweighs its likely benefit to Plaintiffs. Defendant further objects to this interrogatory as overly broad and unduly burdensome.

> Subject to and without waiving said objection, see documents produced herewith and bates labeled BAR000679-802, which consist of remittance reports for each ironworker who provided work for Barnhart in the state of Arkansas in 2019 and spreadsheets bates labeled BAR000678 and BAR000803.

These documents include Excel spreadsheets, some of which are not understandable (to the Court) without additional explanation or reference and other documents containing information. These other documents contain lists of names of various employees associated with various Locals (i.e. 79, 167, 405, 469, 782, and others) for certain time periods and which indicate hours worked and ERISA contributions made in 2019. Based on Defendant's written response, the Court assumes that these persons worked in relevant counties in Arkansas, although it is not immediately apparent from the documents provided. Defendant supplemented its production after an August 1, 2023 meet-and-confer, producing additional spreadsheets for work done in Arkansas from 2016-2018 and 2020. These documents provide project numbers, customer names, and county locations for work performed.

In their statement of the discovery dispute, Plaintiffs argue that the information is insufficient because, based on a corporate designee deposition, Defendant has "job site reports" that include "project number and locations of Barnhart's projects . . . [and] will allow the Plaintiffs to determine what work was performed within Local 321's jurisdiction and whether that work was performed pursuant to the National Maintenance Agreement, or some other CBA." Plaintiffs further represent that Defendant provided job site reports for projects other than projects in Arkansas.

In its statement of the discovery dispute, Defendant states that the discovery has been resolved or abandoned. It represents that it provided detailed information about 5 jobsites requested by Plaintiffs, job site reports for 2019 for projects in Arkansas, and job site data for all years requested for projects in Arkansas. Defendant further states that the job site reports are

burdensome, that it is, in any event, entitled to judgment on claims related to these reports, and that Plaintiffs do not need the information because their auditor has issued a final report (indicting that additional information is not required for Plaintiffs to assess damages).

Federal Rule of Civil Procedure 26(b)(1) provides for discovery on any relevant matter provided that the discovery is proportional to the needs of the case.  This Court has broad discretion in managing discovery.  <u>Williams v. TESCO Services, Inc.</u>, 719 F.3d 968, 976 (8th Cir. 2013).

Contributions allegedly owed as to Local 321 is the subject of the Complaint and Defendant's Motion for Partial Summary Judgment and the response thereto (Docs. 37, 74).  Those contributions can be determined, in part, from the job site reports, which Defendant has provided as to 2019.  It further appears from the additional spreadsheets provided by Defendant that ironworkers were employed during the relevant time period in the territorial jurisdiction of Local 321 – the spreadsheets, however, do not have the detail required to determine how many ironworkers were employed, what hours they worked, and to which Local they belonged (information that is contained in the individual job site reports).  As such, those detailed job site reports are relevant to Plaintiff's theory of their case and therefore relevant to this litigation.

However, requiring Defendant to provide job site reports for each job site in the state of Arkansas for 4 years (or perhaps 7 years) is not proportional for the needs of this case at this time.  First, Defendant indicates that providing job site reports for the number of years and the number of job sites reported would be burdensome.  The Court is mindful that because of the manner in which the parties have presented their arguments, they are not able to explain in detail or respond to each other's arguments.  However, from the material submitted, it appears that Defendant cannot simply do an electronic records search because the job site reports appear to be handwritten and of varying format.  As such, it does appear that producing these paper documents may be burdensome.

In addition, Defendant's motion for partial summary judgment presents a legal question: whether, pursuant to the agreements at issue, Defendant owes any or additional contributions to the funds associated with Local 321.  This legal question does not require additional discovery: if the Court were to find that the agreements do not mandate additional contributions, no further job site reports would be necessary.  If the Court came to a different conclusion, then necessary discovery may be directed at that time.  Thus, at this point of the litigation, requiring additional discovery when the matter may be resolved on summary judgment is not proportional to the needs of the case.

### III.     Motion to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that a party may amend a pleading with the opposing party's consent or leave of court and that "[t]he court should freely give leave when justice so requires."  It is within the district court's discretion to deny amendment if there is "undue delay, bad faith, or dilatory motive, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the non-moving party, or futility of the amendment."  Reuter v. JAX Ltd., Inc., 711 F.3d 918, 922 (8th Cir. 2013) (quotation marks and citation omitted).  When there is also a scheduling order that sets forth a deadline for amendment of pleadings, it is within this court's broad discretion to determine "when exceptions to these deadlines are appropriate."  Knoth v. Smith & Nephew Richards, 195 F.3d 355, 358 (8th Cir. 1999).  Plaintiffs' Motion is timely.

Defendant argues that leave to amend should be denied because discovery has (now) closed, the amendments would be futile, there has been undue delay in seeking leave to amend, and it would be prejudiced.  Defendant's arguments make sense: Plaintiffs knew about the newly alleged agreements months prior to seeking leave, Plaintiffs appear to assert claims of non-parties, and allowing leave may require additional discovery which would be prejudicial.  Plaintiffs themselves only offer unconvincing statements in response – that they have been acting in good

faith and that they would like to present comprehensive claims. Moreover, the Court does not find convincing Plaintiffs' hint that Defendant has been dilatory in the discovery process, there being only one discovery dispute that has been brought to the Court's attention.

Nonetheless, Defendant also has been aware of the two agreements, the WTA and the GPPMA, even though it argues that Plaintiffs are not signatories or beneficiaries of the agreements. And, Plaintiffs' increased prayer for damages is just that, a prayer. Permitting an amended complaint does not mandate that Plaintiffs would be entitled to all the damages they request. Permitting an amended complaint also does not require a finding that Plaintiffs can benefit from the contracts they present in their pleading. The Court is mindful that permitting amendment at this stage, when dispositive motions have been filed, will complicate this case. However, the Court does not read the proposed amended complaint as adding any additional claims or new legal theories – Plaintiffs are merely bolstering their original claims with additional contractual support. With that in mind, to the extent that Plaintiffs may be attempting to add claims of non-parties, those claims are **STRICKEN**.

Plaintiffs shall file their amended complaint within three (3) days of the date of this order. An answer is due fourteen (14) days after service.

**IV.     Motions to Seal**

Plaintiffs seek to seal various reports that include confidential employment data for various individuals. The production of these reports are governed by the Protective Order (Doc. 32). For good cause shown, the Motions are **GRANTED**.

**V.     Conclusion**

For the foregoing reasons, Plaintiffs' Motion to Amend Complaint (Doc. 35) is **GRANTED** and Plaintiffs' two unopposed Motions for Leave to File Under Seal (Docs. 72 and

76) are **GRANTED**.  Plaintiffs shall file their amended complaint within three (3) days of the date of this Order; an answer is due fourteen (14) days after service.  To the extent that Plaintiffs' Amended Complaint attempts to assert claims of non-parties, those claims are **STRICKEN**.  This matter is set for a Status Conference on **January 11, 2024 at 9:30 a.m.** in Courtroom 15S.  Parties should be prepared to discuss any necessary discovery and supplementation of the pending motions for summary judgment and to exclude.

*/s/ John M. Bodenhausen*
JOHN M. BODENHAUSEN
UNITED STATES MAGISTRATE JUDGE

Dated this 28th day of November, 2023